UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARCUS HAYNES, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:15-CV-02569 |
| § | |
| BREATHING CENTER OF HOUSTON, *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

### I.   INTRODUCTION

Pending before the Court is the defendants', Breathing Center of Houston, Jared Jacox, Sean Hatch, Deanna Jensen, David Jensen, and Gary Murray (collectively, the "defendants"), motion to dismiss the plaintiff's original complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b) (Dkt. No. 22) and memorandum of law in support (Dkt. No. 23). The plaintiff, Dr. Marcus Hayes, has filed a response in opposition (Dkt. No. 24). After having carefully considered the motion, response, and the applicable law, the Court determines that the defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**.

### II.   FACTUAL OVERVIEW

The plaintiff is a former employee of the Breathing Center of Houston ("BCH"). He began working for BCH on November 9, 2009, as the Director of Physical Therapy. Prior to this termination, the plaintiff claims that, in January 2013, he discovered that BCH, through its employees, engaged in fraudulent billing practices. These alleged fraudulent billing practices included "allowing Physical Therapist Assistants/Aids to make corrections to patient bills and patient notes; allowing unlicensed individuals to make changes to patient files; other BCH personnel to use Plaintiff's billing code without his authorization or approval; and other billing misconduct[.]" On or January 23, 2014, the plaintiff reported the misconduct to BCH's office manager, Rebecca Lacy, who

forwarded his complaint to BCH's Chief Executive Officer and Chief Financial Officer, Jared Jacox and Sean Hatch, respectfully. The plaintiff alleges that he continued to report the fraudulent billing practices on May 29, 2014. In June 2014, the plaintiff met with Mr. Hatch and Mr. Jacox to discuss the billing practices. At that time, it was determined that the plaintiff would take paid leave. On July 24, 2014, while on leave, the plaintiff was terminated from BCH.

On September 9, 2015, the plaintiff filed suit against BCH and its officials asserting the following violations of the: (1) 42 U.S.C. § 1983; (2) false claims act; (3) section 453.201 of the Texas Occupational Code; (4) breach of contract; (5) common law fraud[1]; (6) wrongful termination; and (7) tortious interference with perspective business relations. The plaintiff asserts federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## III. STANDARD OF REVIEW

### A. Standard Under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) permits the dismissal of an action for the lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "If [a federal] court determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 880 n.3 (3rd Cir. 1992) (citing *Rubin v. Buckman*, 727 F.2d 71, 72 (3d Cir. 1984)) (reasoning that "[t]he distinction between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party.") Since federal courts are considered courts of limited jurisdiction, absent jurisdiction conferred by statute, they lack the power to adjudicate claims. *See, e.g., Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994). Therefore, the party seeking to invoke the jurisdiction of a federal court carries "the burden of proving subject matter jurisdiction by a preponderance of the

---

[1] The plaintiff's original complaint list this claim as "fraud, insurance fraud, medicare/medicaid fraud[.]" Texas does not recognize a civil claim for insurance fraud or medicare/medicaid fraud; thus, the Court presumes that the plaintiff intends to proceed with a common law fraud claim.

evidence." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) (citing *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008); *see also Stockman*, 138 F.3d at 151.

When evaluating jurisdiction, "a [federal] court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)); *see also Vantage Trailers*, 567 F.3d at 748 (reasoning that "[i]n evaluating jurisdiction, the district court must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations.")  In making its ruling, the court may rely on any of the following:  "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *MD Physicians*, 957 F.2d at 181 n.2 (citing *Williamson*, 645 F.2d at 413).

### B.  Standard Under Fed. R. Civ. P. 12(b)(6)

A defendant may move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief may be granted."  FED. R. CIV. P. 12(b)(6).  A dismissal for failure to plead fraud with particularity pursuant to Federal Rule of Civil Procedure (9)(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim.  *See Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996) (citing *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520 (5th Cir. 1993)).  Under the requirements of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true."  *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) (citing *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991)).  Dismissal is appropriate only if, the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(internal citations omitted). Nevertheless, when considering a 12(b)(6) motion to dismiss, the Court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his claims, not whether the plaintiff will eventually prevail. *See Twombly* at 563 n.8 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds)); *see also, Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

### C. Rule 9(b) Standard

A dismissal for failure to plead fraud with particularity pursuant to Federal Rule of Civil Procedure (9)(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *See Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996) (citing *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520 (5th Cir. 1993)). Rule 9(b) states that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The particularity required for such pleading, however, varies from case to case. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003). The Fifth Circuit reasoned that "[a]t a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs.*, 343 F.3d at 724 (citing *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992) (internal quotation marks and citation omitted)); *see also, Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). More precisely, Rule 9(b)'s particularity requirement compels that "the who, what, when, where, and how [] be laid out." *Benchmark Elecs.*, 343 F.3d at 724 (citing *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)); *see also, Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) (noting that "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not.").

IV.     ANALYSIS & DISCUSSION

    A.     The Plaintiff's 42 U.S.C. § 1983 Claim

The Court grants the defendants' motion with regard to the plaintiff's section 1983 claim. To state a cause of action under 42 U.S.C. § 1983, a plaintiff "must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person [or entity] acting under the color of state law." *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998) (internal citations omitted). While the plaintiff has met the first element by alleging violations of his First Amendment right to free speech, his complaint falls short in alleging that those First Amendment violations were committed by the defendants acting under the color of state law. *See Doe*, 153 F.3d at 215.

The plaintiff's complaint alleges that he was terminated because he "constantly voiced his concern over the billing practices on BCH." (Dkt. No. 1, pg. 14, ¶ 45). The plaintiff's section 1983 claim attempts to impute liability on the defendants based on the alleged fraudulent scheme to obtain Medicare/Medicaid benefits from the government. BCH is undisputedly a private entity and the remaining named defendants were all BCH's employees at the relevant time period. The Fifth Circuit has made clear that a private entity is not acting under the color of law even if regulated by statutory authority. *Bass v. Parkwood Hosp.*, 180 F.3d 234, 242 (5th Cir. 1999) ("a private hospital is not transformed into a state actor merely by statutory regulation."); *see also Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989) (finding no state action in hospital's disciplinary action against doctor, even though statutes regulated hospital and provided limited judicial review of disciplinary action); *Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1348–49 (5th Cir. 1985) (finding no state involvement to support section 1983 action against private nursing home despite state regulation and public funding). BCH's right to payment for services rendered to its Medicare/Medicaid patients is regulated by the federal government—Centers for Medicare and Medicaid Services and the United States Department of Health and Human Services. This government funding and regulation do not

bring BCH management within the meaning of a state actor for section 1983 purposes. Thus, the defendants were not acting under the color of law when it terminated the plaintiff. Accordingly, the Court dismisses the plaintiff's section 1983 claim.

### B. The Plaintiffs' Retaliation Claim Under the FCA

The Court denies the defendants' motion to dismiss the plaintiff's FCA claim because the Court finds that the plaintiff's allegations, taken as true, state a violation. At the outset, the Court rejects the argument that the plaintiff's FCA claim is forfeited by his failure to comply with the procedural requirements of the statute.

"The purpose of the [FCA] . . . is to discourage fraud against the government, and the whistleblower provision is intended to encourage those with knowledge of fraud to come forward". *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994). Specifically, the FCA's anti-retaliation provision states the following:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1).

Thus, an employee bringing an FCA retaliation claim must show that: (1) he or she engaged in protected activity; (2) his or her employer knew the employee engaged in protected activity; and (3) his or her employer took adverse action because of it. *United States ex rel. Patton v. Shaw Servs., L.L.C.*, 418 F. App'x 366, 371–72 (5th Cir. 2011) (citing 31 U.S.C. § 3730(h)).

#### 1. Protected Activity

"A protected activity is one motivated by a concern regarding fraud against the government." *Thomas v. ITT Educ. Servs., Inc.*, 517 F. App'x 259, 262 (5th Cir. 2013) (citing *Riddle v. Dyncorp Int'l, Inc.*, 666 F.3d 940, 941 (5th Cir. 2012).

In his original complaint, the plaintiff alleges that, in January 2013, he began noticing BCH's billing practices "becoming unethical" and "expressed anxieties over the billing practices of BCH becoming illegal." (Dkt. No. 1, pg. 8, ¶ 25). Specifically, the plaintiff asserts that he expressed these concerns to Jared Jacox and Sean Hatch—two named defendants in this case. *Id.* In addition, the plaintiff asserts that he also expressed concerns with BCH's office manager, Rebecca Lacy, because the "billing mistakes were rising out of control." (Dkt. No. 1, pg. 11-12, ¶ 36). These allegations, taken as true, are sufficient to demonstrate that the plaintiffs engaged in protected activity within the meaning of the FCA.

### 2. Notice

The plaintiff also alleges that the defendants knew that he was engaging in protected activity because tension was created after he voiced his concerns. "Notice can be accomplished by expressly stating an intention to bring a [FCA] suit, but it may also be accomplished by any action which a factfinder reasonably could conclude would put the employer on notice that litigation is a reasonable possibility." *U.S. ex rel. George v. Boston Scientific Corp.*, 864 F. Supp. 2d 597, 608 (S.D. Tex. 2012) (Rosenthal, J.) (quoting *United States ex rel. Williams v. Martin–Baker Aircraft Co.*, 389 F.3d 1251, 1262 (D.C. Cir. 2004).

As support of this element, the plaintiff's original complaint asserts that after lodging his concerns, "[the defendants] assured Plaintiff that they were dealing with it, and that Plaintiff should only worry about handling patients." (Dkt. No. 1, pg. 8, ¶ 25). The plaintiff also claims that, on one occasion, all employees received a written reprimand for the billing mistakes.[2] (Dkt. No. 1, pg. 12, ¶ 37). In addition, the plaintiff claims that he discussed the billing practices with BCH's leadership. (Dkt. No. 1, pg. 11, ¶ 35). From these assertions, a factfinder could reasonably conclude that the employer was on notice that litigation was a reasonable possibility.

---

[2] The plaintiff's original complaint specifically alleges that "on January 23, 2014, Mrs. Lacy sent Mr. Jacox, Mr. Hatch, and all of the physical therapists at BCH an email reprimanding all employees for billing mistakes, citing that 'there were 6 patients billed with errors yesterday out of 17.'"

### 3. *Causation*

Lastly, the plaintiff asserts that he was retaliated against for raising his concerns regarding the alleged unlawful billing practices. To establish the merits of the last element of a FCA retaliation claim, the employee must allege that the employer's "retaliation was motivated by the protected activity." *U.S. ex rel. George v. Boston Scientific Corp.*, 864 F. Supp. 2d 597, 609 (S.D. Tex. 2012) (Rosenthal, J.) (citing *Shekoyan v. Sibley Int'l.*, 409 F.3d 414, 422 (D.C. Cir. 2005)) (citation omitted). Here, the plaintiff's original complaint is replete with allegations that he was terminated because of his concerns regarding the billing practices. Thus, given these allegations, the plaintiff has adequately alleged causation. As a result, the defendants' motion should be denied as to this claim.

**C.     The Defendants' Rule 9(b) Motion**

The Court denies the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 9(b), because the Court determines that the plaintiff has pled a FCA claim with sufficient particularity. Rule 9(b) does not operate in isolation, but rather should be read "as part of the entire set of rules, including Rule 8(a)'s insistence upon 'simple, concise, and direct' allegations." *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 178 (5th Cir. 1997). Rule 9(b) is context specific and flexible and must remain so to achieve the remedial purpose of the FCA. *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009). Because of Rule 9(b)'s remedial purpose, the Fifth Circuit has opted to:

> [R]each for a workable construction of Rule 9(b) with complaints under the False Claim Act; that is, one that effectuates Rule 9(b) without stymieing legitimate efforts to expose fraud. We hold that to plead with particularity the circumstances constituting fraud for a [FCA] claim, an employee's complaint, if it cannot allege the details of an actually submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.

*Id.* at 190.

The plaintiff has met this standard. In his original complaint, the plaintiff provides specific descriptions of an alleged chain of events leading to the plaintiff's purported discovery of unlawful billing practices and the defendant's attempts to ameliorate the situation. The plaintiff's allegations provide the approximate dates that he acquired the knowledge, with whom he spoke, that emails were sent and received, and meetings he attended regarding the issues. The plaintiff also identified the defendants' alleged billing system, which allegedly submitted false claims to the government for payment. These facts, when taken as true, establish that the defendant engaged in acts that may fall within the ambit of the FCA's anti-retaliation provision. Accordingly, the Court finds that the plaintiff has pled his FCA claim with sufficient specificity and denies the defendants' Rule 9(b) motion. Further, the Court denies the defendants' request for attorney's fees under section 3730(d)(4) of the FCA.

### D. Violation of § 453.201 of the Texas Occupation Code

Next, the defendants argue that a dismissal is warranted on the plaintiff's claim for alleged violations of section 453.201 of the Texas Occupation Code because the statute does not confer a private right of action. The Court disagrees. Section 453.201 states, in relevant part, that "[a] person may not practice physical therapy or practice as a physical therapist assistant, unless the person is an individual who holds a license issued by the board." Tex. Occ. Code § 453.201(a). The plaintiff's original complaint asserts that the "Defendants violated the above statute when they consistently allowed receptionists, Physical Therapy Aids, and other non-medical/non-physical therapists personnel make corrections to bills and patient notes; or when receptionists, Physical Therapy Aids, and other non-medical/non-physical therapists personnel to sign the Plaintiff's name to patient daily notes or bills or use the Plaintiff's code to bill patients." (Dkt. No. 1, pg. 18, ¶ 61).

The Supreme Court of Texas has noted that "[w]hen a private cause of action is alleged to derive from a constitutional or statutory provision, our duty is to ascertain the drafters' intent." *Brown v. De La Cruz*, 156 S.W.3d 560, 563 (Tex. 2004) (citing *Rocor Int'l, Inc. v. Nat'l Union Fire*

*Ins. Co. of Pittsburgh, PA*, 77 S.W.3d 253, 260 (Tex. 2002)).  Private "causes of action may be implied only when a legislative intent to do so appears in the statute as written." *Id.* at 567 (citations omitted).

The statute in this case clearly implies such a right.  The Texas Legislatures' intent to create the plaintiff's right of enforcement in the alleged statute is evidenced by section 453.453 of the statute, which states:

> (a) A person found by a court to have violated this chapter is liable to the state for a civil penalty of $200 for each day the violation continues. (b) A civil penalty may be recovered in a suit brought by the attorney general, a district attorney, a county attorney, or any other person.

Tex. Occ. Code § 453.453.

A plain reading of the statute guides the Court to its conclusion by the "any other person" language of the provision.  The plaintiff falls within the category of any other person.  Similarly, the Court's finding is further supported by section 453.454 of the Texas Occupational Code entitled "Recovery and Costs and Fees," which provides that "[a] person other than the attorney general, a district attorney, or a county attorney who brings an action to enforce this chapter or for injunctive relief may recover the person's court costs and attorney's fees." Tex. Occ. Code § 453.454.  Thus, the statutory language expressly implies a right of enforcement for the plaintiff.  Therefore, the Court denies the defendants' motion to dismiss the plaintiff's section 453.201 claim.

    E.    **Breach of Contract**

The Court grants the defendants' motion to dismiss regarding the plaintiff's breach of contract claim.  The defendants argue that the plaintiff's breach of contract claim should be dismissed because he "does not plead any provision of the alleged contract that was breached by Defendants."

To prevail on a breach of contract claim, a plaintiff must show: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the

defendant; and (4) damages sustained as a result of the breach. *Valero Mtkg. & Supply Co. v. Kalama Int'l.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (internal citation and emphasis omitted).

Here, the plaintiff has not pled facts showing the existence of a valid contract. The plaintiff's original complaint admits that his previous two-year contract expired. (Dkt. No. 1, pg. 7, ¶ 20). With no facts pled of a contract renewal, the Court is inclined to agree with the defendants that the plaintiff was a "terminable-at-will" employee. In Texas, absent existing contractual or statutory limitations, an employee is at will, and may be terminated at any time, with or without cause. *See Winters v. Houston Chronicle Pub. Co.*, 795 S.W.2d 723, 723–724 (Tex. 1990) (internal citations omitted). The at-will status may be altered only by clear and specific terms to the contrary. *See Schroeder v. Texas Iron Works*, 813 S.W.2d 483, 489 (Tex. 1991) (overruled on other grounds); *Collins v. Allied Pharmacy Management*, 871 S.W.2d 929, 933 (Tex. App.—Houston [14th Dist.] 1994, no writ). The burden of showing such an express agreement is on the employee. *See Totman v. Control Data Corp.*, 707 S.W.2d 739, 744 (Tex. App—Ft. Worth 1986, no writ) (internal citations omitted).

Thus, with no facts pled to gird the plaintiff's breach of contract assertion, the Court grants the defendant's motion to dismiss that claim.

### F. Common Law Fraud

The Court grants the defendants' Rule 12(b)(6) motion to dismiss the plaintiff's common law fraud claim because the Court determines that the plaintiff simply does not state a claim for which relief may be granted. In Texas, to establish a fraud cause of action, plaintiff must demonstrate that the defendant: (1) made a material representation, (2) that was false when made, (3) he knew the representation was false, or made it recklessly without knowledge of its truth and as a positive assertion, (4) he made the representation with the intent that plaintiff would act upon it, and (5) the plaintiff acted in reliance upon it and suffered injury as a result. *Great Plains Trust Co. v. Morgan*

*Stanley Dean Witter & Co.*, 313 F.3d 305, 322 (5th Cir. 2002); (citing *Beijing Metals & Minerals Imp./Exp. Corp. v. Am. Bus. Ctr. Inc.*, 993 F.2d 1178, 1185 (5th Cir. 1993) (Texas law)).

Here, the plaintiff's original complaint centers on the alleged fraudulent scheme to receive payment for Medicare/Medicaid services. The misrepresentations by the defendants, if any, were made directly to the government, not the plaintiff. Likewise, assuming that any misrepresentations were made to the plaintiff with respect to the Medicare/Medicaid claims, the injured party is the government. An attempt to recover damages for fraud on the government is more suited for a FCA claim. Thus, the Court dismisses the plaintiff's common law fraud claim.

### G. Wrongful Termination

The Court denies the defendants' motion to dismiss the wrongful termination claim because the plaintiff's allegations, taken as true, state a claim for relief. As mentioned, the general rule in Texas governing employment relationships is that the employment is presumptively "at will." *Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 481 (5th Cir. 2008) (quoting *Fed. Express Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993)).[3] An exception to this general rule, pronounced in *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733 (Tex. 1985), provides that an employer may not terminate an employee if the sole reason for the discharge or termination is that the employee refused to perform an illegal act. Thus, "[i]n order to establish a *prima facie* case of wrongful termination under *Sabine Pilot*, the plaintiff must prove that: (1) she was required to commit an illegal act which carries criminal penalties; (2) she refused to engage in the illegality; (3) she was discharged; (4) the sole reason for her discharge was her refusal to commit an unlawful act." *White v. FCI USA, Inc.*, 319 F.3d 672, 676 (5th Cir. 2003) (citing *Sabine Pilot*, 687 S.W.2d at 735; *Burt v. City of Burkburnett*, 800 S.W.2d 625, 626–27 (Tex. App.—Fort Worth 1990, writ denied)).

---

[3] "For well over a century, the general rule in this State, as in most American jurisdictions, has been that absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *See also Cnty. of Dallas v. Wiland*, 216 S.W.3d 344, 347 & n. 5 (Tex. 2007).

In this case, the plaintiff's averments regarding the defendant's billing practices are criminal in nature. For example, the plaintiff's original complaint alleges that "BCH began requesting that the Plaintiff see multiple patients at the same time, bill units in empty time slots, and bill incorrectly. However, Plaintiff refused . . . ." (Dkt. No. 1, pg. 8, ¶ 24). Such practice could subject individuals to criminal prosecution for health care fraud under 18 U.S.C. § 1347. The Court recognizes that a question remains regarding whether the plaintiff was discharged solely because of his refusal. However, at this stage of the proceedings, the Court is charged to resolve any factual conflicts in favor of the plaintiff. Accordingly, the Court denies the defendants' motion to dismiss the plaintiff's wrongful termination claim.

### H. Tortious Interference with Prospective Business Relations

The Court grants the defendants' motion to dismiss the plaintiff's tortious interference with prospective business relations claim. To prevail on a claim for tortious interference with prospective business relations in Texas, the plaintiff must establish that: (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third person; (2) the defendant intentionally interfered with the relationship; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff's injury; and (5) the plaintiff suffered actual damage or loss. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013); *Plotkin v. Joekel*, 304 S.W.3d 455, 487 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Here, the plaintiff's original complaint appears to hinge on the assertion that his termination interfered with his employment at BCH. (*See* Dkt. No. 1, pg. 20, ¶ 75-79). The plaintiff's original complaint makes no reference to any prospective business relationship with a third party. *Id.* It is only in his response to the pending motion to dismiss that the plaintiff claims that he "would have in fact entered into another business relationship with another company *IF* he was not fired without

notice . . . ." (Dkt. No. 24, pg. 21). The Court finds this averment to be speculative and unavailing. Therefore, the Court grants the defendant's motion to dismiss this claim.

### I. Leave to Amend

In his response in opposition to the defendants' motion to dismiss, the plaintiff moved in the alternative for leave to amend his complaint. The decision of whether to grant leave to amend "is entrusted to the sound discretion of the district court, and that court's ruling is reversible only for an abuse of discretion." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

Here, the Court finds that permitting the plaintiff the ability to amend would be futile. *Schiller v. Physicians Res. Group Inc.*, 342 F.3d 563, 566 (5th Cir. 2003). Thus, the plaintiff's request for leave to amend his complaint to more fully detail his factual and legal allegations against the defendants is denied.

### V. CONCLUSION

Based on the foregoing analysis and discussion, the defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**.

It is so **ORDERED**.

SIGNED on this 21st day of June, 2016.

_____
Kenneth M. Hoyt
United States District Judge